**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ | ) |
| DISTRICT OF COLUMBIA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 09-879 (EGS) |
| v. | ) |
|  | ) |
| UNITED LEASING ASSOCIATES | ) |
| OF AMERICA, LTD., *et al.*, | ) |
|  | ) |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM OPINION**

Pending before the Court is plaintiff's motion to remand the case to the Superior Court for the District of Columbia ("D.C. Superior Court") and defendant Balboa Capital Corporation's motion for jurisdictional discovery.  Upon consideration of the motions, the responses and replies thereto, the applicable law, the entire record herein, and for the reasons stated below, this Court **GRANTS** plaintiff's motion to remand, **DENIES** plaintiff's request for attorneys fees and costs incurred in bringing this motion, and **DENIES AS MOOT** defendant's motion for jurisdictional discovery.

**I.   BACKGROUND**

On April 9, 2009, the District of Columbia (the "District") filed this action in D.C. Superior Court against defendants United Leasing Associates of America ("United Leasing"), Balboa Capital Corporation ("Balboa"), Chesapeake Industrial Leasing

Company ("Chesapeake"), Television Broadcasting Online, Inc. ("TVBO"), Urban Interfaith Network, Inc. ("Urban Interfaith"), Willie Perkins ("Perkins"), and Michael J. Morris ("Morris"). Am. Compl. ¶¶ 3-9.  The District alleges that from 2004 to the present, defendants conspired to "illegally obtain hundreds of thousands of dollars" from "African-American religious congregations in the District of Columbia and in other regions of the country" through a computer-leasing scheme developed by Morris and Perkins, both individually and through their companies TVBO and Urban Interfaith (collectively, the "TVBO Defenants"). Am. Compl. at 2, ¶¶ 11-18.[1]  The TVBO Defendants allegedly induced congregations to accept computer equipment on the representation that it was "free of charge," when in fact, the congregations were contractually obligated to make "tens of thousands of dollars" in leasing payments to United Leasing, Balboa and Chesapeake (collectively, the "Leasing Defendants") for equipment "that did not work."  Am. Compl. at 2, ¶¶ 11-29. As a result of the alleged scheme, some churches in the District were "forced to remove money from their community funds to keep paying the leases," while other churches were subject to aggressive collection efforts and threatened with litigation.

---

[1]    A detailed description of the alleged scheme is contained in the District's First Amended Complaint.  *See* Docket No. 1, Ex. 1. Because the details of the alleged scheme are not relevant to the pending motion, it is discussed only in general terms.

Am. Compl. ¶¶ 27-29.  The District further alleges that the defendants' actions resulted in many of the churches having to reduce their religious services and other community activities. Am. Compl. ¶ 64.

Pursuant to its authority under the D.C. Consumer Protection Procedures Act ("DCCPPA"), and as *parens patriae* for the residents of the District, the District brought this action asserting claims of fraud, negligence, civil conspiracy, and public nuisance, as well as violations of the D.C. Human Rights Act ("DCHRA") and the DCCPPA.  The District is requesting: (i) an injunction to prevent further collection on the leases; (ii) rescission of the transactions; (iii) restitution and disgorgement; (iv) a permanent injunction prohibiting defendants from engaging in the behavior alleged in the complaint; (v) civil penalties; and (vi) attorneys fees and costs.  Am. Compl. at 16-17.

On May 8, 2009, defendants filed a Notice of Removal with this Court, asserting "complete diversity of citizenship between all of the Defendants and all of the Plaintiffs."  Notice of Removal ¶ 4.  On June 8, 2009, the District filed the pending motion to remand, which defendants oppose.

## II. STANDARD OF REVIEW

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  A district court has original jurisdiction of all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and "is between Citizens of different States."  *Id.* § 1332(a).   "When a plaintiff seeks to remand to state court a case that was removed to federal court, 'the party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court.'"  *RWN Dev. Group, LLC v. Travelers Indem. Co. of Conn.*, 540 F. Supp. 2d 83, 86 (D.D.C. 2008) (quoting *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005)).

"Because of the significant federalism concerns involved, this Court strictly construes the scope of its removal jurisdiction."  *Breakman v. AOL, LLC*, 545 F. Supp. 2d 96, 100 (D.D.C. 2008) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941)).  Therefore, "[a]ny doubts as to whether federal jurisdiction exist must be resolved in favor of remand."  *RWN Dev. Group*, 540 F. Supp. 2d at 87 (citing cases); *see also,*

*e.g.*, *Breakman*, 545 F. Supp. at 101 ("'[I]f federal jurisdiction is doubtful, a remand to state court is necessary.'" (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2003) (en banc)); *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) ("Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand.").  If the removing party cannot meet its burden, the court must remand the case.  *See, e.g.*, *Reed v. Alliedbarton Sec. Servs., LLC*, 583 F. Supp. 2d 92, 93 (D.D.C. 2008); *Johnson-Brown*, 257 F. Supp. 2d at 177.

## III. DISCUSSION

### A.  Plaintiff's Motion to Remand to D.C. Superior Court

Defendants allege that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.  Notice of Removal ¶ 8.  As noted above, diversity jurisdiction requires both (i) complete diversity and (ii) an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332.  The parties dispute whether the former requirement has been met in this case.

As relevant here, complete diversity exists where parties are "Citizens of different States."  *Id.* § 1332(a)(1).  States, however, are not subject to diversity jurisdiction under § 1332. *See Long v. District of Columbia*, 820 F.2d 409, 412-13 (D.C. Cir. 1987) (explaining that because "'a suit between a State and a citizen or corporation of another State is not between citizens

of different States,'" a federal court will only have jurisdiction if the action "'arises under the Constitution, laws or treaties of the United States'" (quoting *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482 (1894))).  The D.C. Circuit has concluded that the District must be treated like a state for purposes of diversity jurisdiction, and consequently is not subject to removal under § 1332.  *See id.* at 414 ("[T]he District, like the fifty states, is not subject to diversity jurisdiction.").

The District therefore argues that defendants' removal on the basis diversity jurisdiction was improper.  Pl.'s Mot. to Remand at 10-15.[2]  Defendants counter, however, that removal was proper because "[t]he real plaintiffs in interest are various church congregations located in and constituting citizens of the District of Columbia."  Notice of Removal ¶ 6.  Accordingly, defendants argue that the District is a nominal party whose presence should be disregarded for purposes of determining

---

[2]     In its motion to remand, the District raised additional arguments regarding why removal was improper.  Specifically, the District argues that: (i) defendants Perkins and TVBO are citizens of the District, and therefore complete diversity does not exist; and (ii) certain defendants failed to provide timely notice of or consent to removal.  In response to the District's first argument, Balboa filed a motion seeking leave to conduct limited depositions of Perkins and TVBO.  *See generally* Docket No. 26.  Because the Court finds that the District is not subject to removal on the basis of diversity jurisdiction, the Court need not reach these additional issues.  Accordingly, Balboa's motion for leave to conduct jurisdictional discovery is **DENIED AS MOOT.**

whether complete diversity exists.  *See District of Columbia*, *ex rel. American Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047-48 (D.C. Cir. 1986) (explaining that when the District is a nominal party, its presence in the lawsuit does not defeat diversity jurisdiction); *see also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").

The issue before the Court, then, is whether the District is the "real party in interest" in this litigation.  *See* Fed. R. Civ. P. 17(a).  If it is, then subject-matter jurisdiction is lacking and the case must be remanded.

"The focus of the 'real party in interest' inquiry is on 'the essential nature and effect of the proceedings.'" *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1061 (W.D. Wis. 2004) (quoting *Adden v. Middlebrooks*, 688 F.2d 1147, 1150 (7th Cir. 1982)).  In conducting this inquiry, courts typically look to the relief requested.  *See Missouri, Kansas, & Texas Ry. Co. v. Hickman*, 183 U.S. 53, 59-61 (1901).  The real party in interest is generally a direct beneficiary of the requested relief, while a nominal party is not. *See id.* (concluding that the government lacked "a real pecuniary interest in the subject-matter of the controversy" and therefore was not the real party in interest).  Consequently, nominal parties may be disregarded from the

7

diversity analysis as they lack a "substantial stake in the outcome of the case." *Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) ("viewing the complaint as a whole" and then concluding that the state was sufficiently interested in the outcome of the case such that it was the real party in interest); *see also American Combustion,* 797 F.2d at 1047 (concluding that the District was a nominal party who could be disregarded for diversity purposes because it had no pecuniary interest in the lawsuit, was not involved in the prosecution of the lawsuit, and was protected from any liability for its costs or results).

Defendants argue that the District is a nominal party because it seeks to protect "only a specific subgroup of its population," and therefore lacks a quasi-sovereign interest in the case.  Chesapeake Opp'n Br. at 5; *see also* Balboa Opp'n Br. at 11.  A quasi-sovereign interest is "an interest apart from the interests of particular private parties." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1992). Without a quasi-sovereign interest, a state is a nominal party that can be disregarded for diversity purposes. *Id.* at 600, 607. For instance, if a state is merely "stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves," then the state is "a nominal party without a real interest of its own." *Id.* However, "[a] state is not a

8

nominal party if it has quasi-sovereign interests beyond the interests of a few particular private parties." *Maine v. Data Gen. Corp.*, 697 F. Supp. 23, 25 (D. Me. 1988).  Accordingly, in order to be the real party in interest in this litigation, the District must have a quasi-sovereign interest that extends beyond the interests of the African-American churches.  The Court concludes that such an interest exists.

Through this action, the District is exercising its authority to prevent the individuals and corporations engaged in allegedly predatory and fraudulent activities from targeting and soliciting further business within its domain.[3]  Am. Compl. ¶ 2. Such an action implicates two well-established quasi-sovereign interests: (i) securing an honest marketplace, *see, e.g.*, *Snapp*, 458 U.S. at 607 ("[A] State has a quasi-sovereign interest in the health and well-being - both physical and economic - of its residents in general."); *Hood*, 428 F. Supp. 2d at 545 ("[T]he State has a quasi-sovereign interest in the economic well-being of its citizens, which includes securing the integrity of the marketplace."); *New York v. Gen. Motors Corp.*, 547 F. Supp. 703,

---

[3]    The DCCPPA authorizes the Attorney General for the District to bring an action in the name of the District in order to obtain an injunction, restitution, civil penalties, costs, and fees. D.C. Code § 28-3909.  Moreover, as the officer charged with "the conduct of all law business" of the District, D.C. Code § 1-301.111, the Attorney General is authorized to bring common law actions to protect its quasi-sovereign interests.  *See generally* Pl.'s Mot. to Remand at 14-15.

705 (S.D.N.Y. 1982) ("The State's goal of securing an honest
marketplace in which to transact business is a quasi-sovereign
interest."); and (ii) securing residents from the harmful effects
of racial discrimination, *see, e.g.*, *Snapp*, 458 U.S. at 609
("This court has had too much experience with the political,
social, and moral damage of discrimination not to recognize that
a State has a substantial interest in assuring its residents that
it will act to protect them from these evils."); *New York v.
Peter & John's Pump House, Inc.*, 914 F. Supp. 809, 812 (N.D.N.Y.
1996) ("[T]he State has a quasi-sovereign interest in preventing
racial discrimination of its citizens.").  The District therefore
has significant quasi-sovereign interests that it seeks to
protect through this litigation.

Moreover, despite defendants' assertions to the contrary,
this action does not accrue solely to the benefit of the African-
American churches allegedly injured by defendants.  The
District's request for injunctive relief, civil penalties, and
costs is "designed to vindicate the State's interest in
preserving fundamental honesty, fair play and right dealings in
public transactions." *Missouri ex rel. Webster v. Best Buy Co.,
Inc.*, 715 F. Supp. 1455, 1457 (E.D. Mo. 1989).  The widespread
relief "goes well beyond addressing the claims of previously
injured organizations or individuals." *See Abbott Labs.*, 341 F.
Supp. 2d at 1063 (concluding that the Attorney General's request

10

for injunctive relief was aimed at "securing an honest
marketplace, promoting proper business practices, protecting
[state] consumers, and advancing plaintiff's interest in the
economic well-being of its residents").  Indeed, "the indirect
benefits of barring unscrupulous companies from soliciting
further business accrues to the population at large."  *Illinois
v. SDS West Corp.*, No. 09-3128, 2009 U.S. Dist. LEXIS 65736, at
*9 (C.D. Ill. July 29, 2009); *see also* Pl.'s Mot. to Remand at 15
("[R]equiring parties who engage in unfair trade practices to
disgorge their ill-gotten gains and pay penalties serves not only
to make private victims whole, but to deter future violation.")[4]

Therefore, having considered the "essential nature and the
effect" of the complaint as a whole, *Abbott Labs.*, 341 F. Supp.
2d at 1061, this Court concludes that the District has a
"substantial stake" in the outcome of this litigation and is the
real party in interest.  *See Hood*, 428 F. Supp. 2d at 546
(concluding that the State of Mississippi was the real party in
interest due to the State's "substantial stake" in the case).
The fact that the District is seeking compensatory damages for

---

[4]     Moreover, absent litigation by the District, it is unlikely
that the requested injunctive relief would be obtained because
"the interests of the State and individual victims are not
coextensive." *Peter & John's Pump House, Inc.*, 914 F. Supp. at
812.  For instance, "[p]rivate litigants might not achieve the
complete relief requested that the State seeks because they have
a greater incentive to compromise requests for injunctive relief
in exchange for increased money damages." *Id.*

the injured African-American churches does not diminish the
District's substantial stake in this action. *See Abbott Labs.*,
341 F. Supp. 2d at 1063 ("The fact that private parties may
benefit monetarily from a favorable resolution of this case does
not minimize or negate plaintiff's substantial interest."); *see
also, e.g., SDS West Corp.*, 2009 U.S. Dist. LEXIS 65736, at *12
(concluding that the state was the real party in interest even
though it was seeking rescission and restitution on behalf of
injured individuals); *Illinois v. LiveDeal, Inc.*, 2009 U.S. Dist.
LEXIS 10560, at *5 (C.D. Ill. Feb. 12, 2009) (same); *Webster*, 715
F. Supp. at 1457 (same); *Gen. Motors Corp.*, 547 F. Supp. at 706-
07 (same).

   In sum, because the District is the real party in interest,
this is not a dispute between "Citizens of different States" and
diversity jurisdiction is lacking.  28 U.S.C. § 1332(a)(1); *see
Long*, 820 F.2d at 412-13.[5]  Accordingly, this Court finds that

---

[5]   Defendants alternatively argue that "[t]o the extent that
the District of Columbia may be the real party in interest with
respect to any Count in the Complaint, there is no possibility
that the District can establish a cause of action, and its
presence should be disregarded under the doctrine of fraudulent
joinder."  Notice of Removal ¶ 7; *see* Balboa Opp'n Br. at 11-16.
This Court, however, finds the doctrine of fraudulent joinder
inapplicable "where, as here, the party alleged to be
fraudulently joined is the only named plaintiff and that
plaintiff sues on its own behalf."  *WMW Mach. Co., Inc. v.
Koerber A.G.*, 879 F. Supp. 16, 17 (S.D.N.Y. 1995).  Indeed,
"[b]ecause here there exists only one named (non-diverse)
plaintiff seeking a remedy for itself, the proper course of
action is for the defendants to pursue dismissal of plaintiff's
claims in the state court."  *Id.*  But even assuming that

defendants' removal was improper and **GRANTS** plaintiff's motion to
remand this action to D.C. Superior Court.

###### B.    Plaintiff's Request for Attorneys Fees and Costs

Under 28 U.S.C. § 1447(c), a court "may require payment of
just costs and any actual expenses, including attorney fees,"
when an action is remanded.  Plaintiff argues that such costs
should be awarded because, among other reasons, "Defendants
sought removal despite the settled case law that the District is
not a diverse party."  Mot. to Remand at 17; *see Johnson-Brown*,
257 F. Supp. 2d at 181 (explaining that costs and expenses may be
awarded if "the removing party contradicts well-settled law in
attempting to remove the case to federal court"). In view of the
fact that the specific issue presented in this case - whether the
District is the real party in interest in its public advocacy
litigation - is an issue of first impression for this Court, the
Court concludes that defendants' removal was not "contrary to

---

defendants' fraudulent-joinder argument is cognizable, defendants
have failed to establish that "there is no possibility that
plaintiff would be able to establish a cause of action" against
defendants in D.C. Superior Court, *Brown v. Brown & Williamson
Tobacco Corp.*, 26 F. Supp. 2d 74, 77 (D.D.C. 1998), for the
reasons stated in plaintiff's reply brief.  Pl.'s Reply Br. at
13-16; *see also Brown*, 26 F. Supp. 2d at 77 ("[G]iven that the
jurisdiction of this court is uncertain and that a determination
[of fraudulent joinder] should be made cautiously by a court
uncertain of its jurisdiction, it is more appropriate to remand
this case and allow the courts of the District of Columbia to
decide whether or not the plaintiffs can state a valid cause of
action. . . ." (internal quotation and citation omitted)).
Remand to D.C. Superior Court, therefore, is the proper course of
action.

well-settled law." *Id.* Accordingly, the Court declines to award attorneys fees and costs given the circumstances of this case. *See LiveDeal, Inc.*, 2009 U.S. Dist. LEXIS 10560, at *10 (declining to award fees and costs on similar facts when there was a "lack of controlling authority on point"). Plaintiff's request for attorneys fees and costs is **DENIED.**

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** plaintiff's motion to remand this action to D.C. Superior Court, where the case commenced, **DENIES** plaintiff's request for attorneys fees and costs, and **DENIES AS MOOT** defendant Balboa's motion for jurisdictional discovery. An appropriate Order accompanies this Memorandum Opinion.

SIGNED:   **Emmet G. Sullivan**
          **United States District Court Judge**
          **August 11, 2009**